IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BRYAN LUCE, as personal representative
of the estate of EULE LUCE**,

      Plaintiff,

vs.                                                        **No. CIV 05-1076 MV/LAM**

**THE CURRY COUNTY BOARD of
COUNTY COMMISSIONERS, ex rel.
THE CURRY COUNTY SHERIFF'S DEPARTMENT,
and DEPUTY SHERIFF DEAN MARNEY,
in his official capacity as Deputy Sheriff**,

      Defendants.

## <u>MEMORANDUM OPINION and ORDER</u>

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Docket No. 8, filed 11/14/2005], Plaintiff's Motion to Strike Medical Records [Docket No. 26, filed 2/14/2006], Defendant's Motion for Attorney Fees [Docket No. 28, filed 2/27/206], and Defendant's Motion for Sanctions [Docket No. 29, filed 2/27/2006].  As explained below, because Eule Luce's claim for damages resulting from an alleged violation of his constitutional rights did not abate upon his death, and because there is a genuine issue of material fact regarding the force used during his seizure after a traffic stop, summary judgment must be denied except for his claims for assault and false imprisonment.  The motions for attorney fees and sanctions and Plaintiff's motion to strike will also be denied.

### I.  Background

    Eule Luce commenced this action in state court, alleging state-law claims for assault,

1

battery, and false imprisonment under the New Mexico Tort Claims Act against Sheriff's Deputy Dean Marney.  Officer Marney had stopped and cited Mr. Luce for minor traffic violations on February 22, 2005.  Mr. Luce later amended his complaint to add an excessive-force claim under 42 U.S.C. § 1983, and Defendants removed the action to federal court.  Mr. Luce alleged that Officer Marney used excessive force during a pat-down for weapons after stopping him for failure to yield to an emergency vehicle (the police car that Officer Marney was driving) and for driving without headlights.  His complaint alleged that, "without cause or provocation," Officer Marney "kicked Plaintiff's left foot out from under him, causing severe swelling and severe damages which resulted in part of Plaintiff's left foot being amputated."  Pl. First Amended Compl. at 2.  He alleged that Officer Marney "used unreasonable, unnecessary and excessive force" because he "kicked [Plaintiff's] foot with such force that Plaintiff lost his balance and fell to the ground."  Id. at 6.  He stated that "another officer at the scene went to Plaintiff and apologized . . .  claiming that [Officer Marney] was 'new.'"  Id.

Mr. Luce died in October 2005 of coronary artery disease and diabetes, Def. MSJ, Ex. C, and the Court approved a stipulated order substituting Bryan Luce, his estate's personal representative, as the plaintiff in this case.

Shortly thereafter, Defendants filed a motion for summary judgment, arguing that (1) Officer Marney was entitled to qualified immunity because Plaintiff could not demonstrate that Officer Marney violated any clearly-established law; (2) Plaintiff's claims did not survive the death of Mr. Luce; and (3) Plaintiff's claims under the Tort Claims Act could not be established because Officer Marney's alleged use of force was reasonable and necessary and because Mr. Luce's detention was reasonable under the circumstances.  Plaintiff responded to the motion,

attaching an affidavit that Mr. Luce had prepared before his death; Defendants replied.  In

January 2006, the magistrate judge in this case granted Defendants' unopposed motion to stay

discovery pending outcome of the motion for summary judgment.  In February, Plaintiff moved

to strike unauthenticated medical records and an affidavit attached to Defendants' Reply Brief,

and Defendants then moved for sanctions and attorney fees.

## II.  Legal Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  In making my determination, I must draw all justifiable

inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  *Id.* at 248.  Once the moving party has initially

shown "that there is an absence of evidence to support the non-moving party's case," *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward, after adequate

time for discovery, with significant probative evidence showing a triable issue of fact.  Fed. R.

Civ. P. 56(e).

## III.  Analysis

**A.  Request for dismissal for failure to seek concurrence.**  Citing D.N.M. LR-Civ. 7.1,

Plaintiff requests dismissal of the motion for summary judgment on the basis that Defendants

failed to seek his concurrence in filing the motion.   His request is denied.  The Rule does not

require that parties seek concurrence; it requires only that a "[m]ovant must determine whether a

3

motion is opposed." D.N.M. LR-Civ. 7.1.   Logic dictates that a motion for summary judgment will always be opposed; thus it was not necessary for Defendants to ask Plaintiff whether he opposed the motion before Defendants filed it.

**B. Abatement.**   Citing *Medina v. Pacheco*, 161 F.3d 18 (10th Cir. 1998), an unpublished Tenth Circuit case, Defendants assert that claims brought for intentional torts under § 1983 do not survive the death of the plaintiff.   But, as Plaintiff points out, in *Medina*, the question was whether the representative of an estate could *bring* claims for unlawful removal and transportation of children under § 1983 on behalf of a father who died *before* suit was filed.   *See Medina*, 161 F.3d at **4.   The New Mexico statute listing specific causes of action that survived a victim's death did not include personal injury except for deceit or fraud.   *See id.* at **4-**5 (quoting N.M.S.A. § 37-2-1).   Relying on the New Mexico common-law principle that claims for torts did not survive the death of the victim and noting a case in which the New Mexico Court of Appeals held that "a damage claim based on personal injuries due to negligence should survive the victim's death," the Tenth Circuit, as an issue of first impression, held that intentional-tort claims under § 1983 did not survive the death of the victim.   *Id.* at **5.   I conclude that *Medina* is not persuasive law because it is factually distinguishable and is relevant only to those situations in which the plaintiff dies before a suit has been filed.

Although not cited by the parties, I find precedential guidance in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004):

> Although as a general matter federal courts look to state law in fashioning rules regarding whether a § 1983 claim survives the plaintiff's death, *Robertson v. Wegmann*, 436 U.S. 584, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978), they will not do so if such a rule would frustrate the very purpose of the § 1983 action. *See e.g.*, *Jaco v. Bloechle*, 739 F.2d 239, 244 (6th Cir.1984):

> The § 1983 objective of protecting individual civil liberties by providing
> compensation to the victim for an illegal deprivation of constitutional entitlements
> by state officers cannot be advanced, and is only undermined, by deferring to a
> state law which decrees abatement under circumstances where, as here, asserted
> constitutional infringements resulting from action taken under color of law caused
> instant death.

> *Id.*

*Pierce*, 359 F.3d at 1290.  New Mexico has a statute specifically addressing abatement of actions

that were filed before a party's death.  N.M.S.A. § 37-2-4 provides:

> No action pending in any court shall abate by the death of either, or both, the
> parties thereto, except an action for libel, slander, malicious prosecution, assault
> or assault and battery, for a nuisance or against a justice of the peace for
> misconduct in office, which shall abate by the death of the defendant.

N.M.S.A. § 37-2-4; *see Padilla v. Estate of Griego*, 830 P.2d 1348, 1351-52 (N. M. App.1992)

(noting that § 37-2-4 "applies only when death occurs while an action is pending; it describes

which pending actions abate when one of the parties dies" and distinguishing N.M.S.A. § 37-2-1,

which governs "which actions can initially be brought").

Clearly, under New Mexico law, Mr. Luce's cause of action did not abate by his death.

Section 37-2-4 furthers the goals of § 1983 to provide compensation to victims of illegal

violations of their constitutional rights and to deter unconstitutional conduct by the tortfeasor.  I

conclude that Defendants' motion for summary judgment on the issue of abatement must be

denied.

### C.  Qualified immunity for failure to demonstrate violation of a constitutional right.

When a defendant asserts a qualified immunity defense, the burden shifts
to the plaintiff, who must first establish that the defendant violated a
constitutional right.  *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).
"If no constitutional right would have been violated were the allegations
established, there is no necessity for further inquiries concerning qualified

immunity." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d
272 (2001).  If, on the other hand, a violation has been shown, the next step in the
qualified immunity sequence is to ask whether the constitutional right was clearly
established.  *Id.*  "This inquiry, it is vital to note, must be undertaken in light of
the specific context of the case, not as a broad general proposition. . . ."  *Id.*  "The
relevant dispositive inquiry in determining whether a right is clearly established is
whether it would be clear to a reasonable officer that his conduct was unlawful in
the situation."  *Id.* at 202, 121 S. Ct. 2151.  Summary judgment based on qualified
immunity is appropriate if the law did not put the officer on notice that his
conduct would be clearly unlawful.  *Id.* (citing *Malley v. Briggs*, 475 U.S. 335,
341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).  If the plaintiff successfully
establishes both a violation of a constitutional right and that the right was clearly
established at the time of the alleged conduct, the burden shifts to the defendant,
who must prove that there are no genuine issues of material fact and that the
defendant is entitled to judgment as a matter of law.  *Olsen v. Layton Hills Mall*,
312 F.3d 1304, 1312 (10th Cir. 2002).

*Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

Analyzing the "first step," which "is to determine whether, based on the allegations, a

constitutional violation can be found," *id.* at 994, and taking the allegations in the complaint as

true and viewing the evidence in the light most favorable to Plaintiff, *see id.*, I conclude that a

jury could find a constitutional violation if it believed that Officer Marney, without cause during

a routine pat down subsequent to a minor traffic stop, kicked Mr. Luce so hard that he fell to the

ground.  Forcefully kicking a detainee is not a "relatively common and ordinarily accepted

non-excessive way" to conduct a pat down of a non-resisting detainee.  *Cf. id.* at 997 (holding

that method of handcuffing was a non-excessive method as a matter of law); *Gallegos v. City of

Colorado Springs*, 114 F.3d 1024, 1030-31 (10th Cir. 1997) (stating, "[i]n determining whether

the precautionary measures were reasonable, the standard is objective--would the facts available

to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that

the action taken was appropriate" and concluding that, "[a]lthough the officer grabbed the

plaintiff's arm three separate times, his actions consisted of a relatively minor application of force that did not exceed the amount allowable under the circumstances.") (quotations, citations, brackets, and alteration omitted).

Analyzing the second step, in which I must determine if "'the law . . . put the officer on notice that his conduct would be clearly unlawful,'" *Cortez*, 438 F.3d at 994 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)), I conclude that the "right to be free from excessive force during an investigative detention was clearly established" when Officer Marney conducted the pat down. *Id.* at 1000 (holding that such right was clearly established by 1997).

Thus I must now move to the third step and determine whether Defendants, in their motion for summary judgment, have established that "there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law." *Id.* at 988.

> "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L. Ed. 2d 443 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited, however, and "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395, 109 S.Ct. 1865. In defining the parameters of this reasonableness standard, the Graham Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396, 109 S.Ct. 1865 (quotations, citations and alteration omitted).

*Id.* at 993.

In his affidavit, Officer Marney swore that he was dispatched to investigate some 911 calls complaining that a vehicle was driving slowly and swerving across the lanes of traffic[1] without headlights on an unlit highway. He testified that he began following Mr. Luce with his lights and sirens engaged, but that Mr. Luce continued to drive slowly for about a mile and a half before he pulled over. Because he was unsure of the situation he encountered, Officer Marney conducted a "felony stop," using his spotlights and bar lights and withdrawing his weapon. He initially ordered Mr. Luce to lay on the ground, but when he saw that "Mr. Luce was an elderly gentleman," he holstered his weapon, conducted a pat down, and asked him for his license and registration. Def. MSJ Ex. A at 2. He swore that "[a]t no time did I kick . . . batter or assault Mr. Luce in any way." *Id.* He asserts that this undisputed fact proves his entitlement to qualified immunity, and also attached a CD copy of the "belt tape" used to record the encounter.

But in his response, Plaintiff notes that Mr. Luce's affidavit alleged facts -- that Officer Marney kicked Mr. Luce's foot with such force that it knocked him to the ground -- that are directly contrary to Officer Marney's testimony and that, if believed by a jury, would establish that Officer Marney used excessive force when he encountered the elderly Mr. Luce.

In their reply brief, Defendants submitted 22 pages of unauthenticated medical records and a second affidavit from Officer Marney authenticating the CD copy of Officer Marney's "belt tape." Defendants argued that the medical records established that, nine months earlier, Mr.

---

[1]It is undisputed that Mr. Luce was delivering mail as a private mail contractor at the time he was stopped by Officer Marney.

Luce had an open lesion on his left great toe that took three months to heal because of diabetes, and that the records show that he received treatment for an ulcerated greater hallux on that same toe that required amputation "more than one week" after his encounter with Officer Marney. Def. Reply Br. at 2-3.  While acknowledging that Mr. Luce reported to his doctor that the injury to his toe was caused by a police officer, Defendants argue that "it is difficult to understand how Defendant Marney could have injured the Plaintiff's big toe by purportedly kicking him."  *Id.* at 3.  Defendants assert that the medical records conclusively establish that Mr. Luce's injury was caused by his advanced diabetes and not by Officer Marney.

I must digress for a moment to address Plaintiff's motion to strike.  Plaintiff argues that the medical records must be stricken and cannot be considered for summary judgment purposes because they are not authenticated as required by Rule 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). While not contesting that they did not properly authenticate the records, Defendant responds that Plaintiff's motion is simply "form over substance" and designed to delay the proceedings and force Defendants to incur additional costs and fees.  Def. Reply to Mot. to Strike at 5.

 I agree with Plaintiff that the medical records should have been properly authenticated, but Plaintiff does not contend that the records actually are not authentic.  Defendants are ordered to supplement the record with the proper documentation within thirty days of the filing of this order.  I deny the motion to strike because I find the records to be helpful in resolving the Defendants' motion and Plaintiff is not prejudiced by their consideration.

The diagnosis in the March 2005 medical records states:  "Diabetic [left] foot ulcer at hallux;" that Mr. Luce reported he was "injured from police officer;" and that the ulcer "appeared

[after] a traffic stop - police officer kicked his feet."  Def. Reply to MSJ, Ex. D.15.  Mr. Luce's

"Past History" included, "diabetes, ulcers."  *Id.*  Mr. Luce's prior left-foot wounds, which were

first treated in May 2004, were diagnosed as open lesions caused by second and third degree

burns.  *See id.* at D1.  Thus, the records could be interpreted to indicate that Mr. Luce, a diabetic,

had a second ulceration caused by an injury to his foot.  The records by themselves do not

establish that the March 2005 ulceration was caused by diabetes as opposed to injury - a

physician would need to testify about the cause of the March ulceration.

Defendants next argue in their reply that Plaintiff has no one who can corroborate Mr.

Luce's affidavit, which will be inadmissible at trial.  They argue that only Officer Marney may

testify about the encounter, and he has sworn that he did not kick Mr. Luce.  They argue that

Officer Marney's belt tape conclusively establishes that Officer Marney "was extremely polite to

[Mr. Luce], never injured the Plaintiff and that the Plaintiff never complained of any injury

during his interaction with Defendant Marney."  Def. Reply Br. at 7.  I reject Plaintiff's

argument that the belt tape is inadmissible and his claim that it is impossible to determine which

voice is Mr. Luce's.  I have carefully listened to the copy that was submitted to the Court and the

voices are obvious and are easily identifiable.

Unfortunately, the copy submitted to the Court does not contain any recordings of the

initial interactions between Officer Marney and Mr. Luce, including the stop and pat down

during which Mr. Luce asserts he was injured.  The copy inexplicably begins after Officer

Marney had returned to his vehicle and began writing traffic citations.  While I agree that Officer

Marney was polite and patient with Mr. Luce in all interactions *after* he walked back to where

Mr. Luce was being questioned by another officer, and that Mr. Luce, *after that point*, did not

10

complain about any injury or request medical assistance, the belt tape simply reveals nothing about the encounter when the alleged injury occurred or the time period between the stop and the writing of the citation.  Officer Marney commented to another officer on the belt tape that Mr. Luce seemed to be "disoriented."  Def. MSJ Ex. 2.  Making all reasonable inferences in favor of Plaintiff, perhaps Mr. Luce was having a diabetic episode and that is why he did not complain about the injury.  Perhaps, if the whole interaction had been recorded, the belt tape would support Mr. Luce's claim that he fell to the ground during the pat down and another deputy apologized for Officer Marney's conduct.  The medical records indicate that Mr. Luce's left foot and toes were numb after his first injury, *see* Def. Reply to MSJ Ex. D2,  and maybe he did not feel any pain at the time.  The belt tape does not establish that Officer Marney did not kick Mr. Luce.

Plaintiff requests an opportunity, since discovery has been stayed, to respond to Defendants' contentions made in their reply brief that there are no witnesses who could corroborate Mr. Luce's testimony.  He desires to depose the other officers who responded to Officer Marney's request for back up, for example.  I will grant the request, and Defendants may renew their motion for summary judgment if Plaintiff cannot produce admissible evidence in support of Mr. Luce's assertions.   In short, at this juncture, Defendants have failed to show that there is no genuine issue of material fact regarding whether Officer Marney kicked Mr. Luce, and if so, what force he used, and summary judgment must be denied except as stated in part E, below.

**D.  New Mexico Tort Claims Act claims.**  For these same reasons, Officer Marney is not entitled to summary judgment on claims brought pursuant to the NM Tort Claims Act except as stated in part E, below.

11

**E. Claims for false imprisonment and assault.** Defendants sought summary judgment on Mr. Luce's claims for false imprisonment and assault. Mr. Luce did not allege any facts in his responsive affidavit indicating that Officer Marney falsely imprisoned or assaulted him. Officer Marney's seizure for the purposes of writing a traffic citation was reasonable as a matter of law. Therefore, I conclude that summary judgment is appropriate on these claims. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 325.

**F. Defendants' motions for attorney fees and for Rule 11 sanctions.** Defendants' motions are based on their view that Plaintiff's claims are meritless and without any factual or legal support, and that requiring the authentication of documents is a frivolous tactic designed for delay. But Defendants misinterpreted the law of abatement, have admittedly failed to follow the rules of procedure, and have failed to conclusively establish that Mr. Luce's claims are invalid. While Mr. Luce's claims may ultimately fail, at this point I conclude that the pleadings have not been filed for the sole purpose of causing unnecessary delay or needless increase in the cost of this litigation. I also conclude that Defendants have not prevailed, thus they are not eligible for attorney fees under 42 U.S.C. § 1988(b).

**NOW, THEREFORE,** Defendants' Motion for Summary Judgment [Docket No. 8, filed 11/14/2005] is **DENIED in part and GRANTED in part,** and Plaintiff's claims for false imprisonment and assault are **DISMISSED WITH PREJUDICE**; Plaintiff's Motion to Strike Medical Records [Docket No. 26, filed 2/14/2006] is **DENIED on the condition that Defendants submit authenticating documentation to this Court within thirty days of the filing of this order**; Defendant's Motion for Attorney Fees [Docket No. 28, filed 2/27/206] is **DENIED**; and Defendant's Motion for Sanctions [Docket No. 29, filed 2/27/2006] is **DENIED**.

IT IS SO ORDERED.

_____

MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE